No. 29,966.

THE PRESCOTT, WRIGHT, SNIDER COMPANY, *Appellant*, v. THE CITY
OF CHERRYVALE, *Appellee*.

(4 P. 2d 457.)

Opinion filed November 7, 1931.

C. J. *Bryant*, of Independence, for the appellant.

*Sullivan Lomax*, of Cherryvale, *Thomas E. Wagstaff, Jay W. Scovel, John Bertenshaw* and *Kirke C. Veeder*, all of Independence, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The Prescott, Wright, Snider Company brought this action against the city of Cherryvale to recover on several obligations of a series of municipal bonds issued by the city for street improvements, all amounting to $19,077.40. In its petition the plaintiff alleged that the bonds were duly issued on July 1, 1923, and that on the 25th of February, 1928, prior to the maturity of the bond and coupons in suit, it purchased them for value and in due course and without notice, and is now the owner of them, but the city declined to pay them. The answer of the city was that the obligations were duly issued by the city, and that on May 26,

1926, the bond and coupons in suit, then the property of one J. B. Coyner, were with other stocks, bonds and money in the custody of the Montgomery County National Bank, which were stolen and carried away with force and violence by robbers and bandits.

It is alleged that after the robbery the bank made an itemized list and statement of the bonds and other valuables stolen, which was transmitted to the Federal Reserve Bank of which it was a member, and that the list was promptly broadcast and sent to all member banks and to the principal stock-and-bond houses of the federal reserve district, and that the Federal Reserve Bank prepared exact photostatic copies of the statements and mailed them out on June 2, 1926, and one of them was mailed to the plaintiff herein.

That as the robbery was one of the greatest in the amount stolen, within the reserve district, all the newspapers for a period of about five weeks printed, and frequently illustrated, stories regarding the robbery, and that plaintiff's officers, agents or employees either read or willfully refused to read the accounts of the robbery, which was discussed and known by all the banks and bond houses in Kansas City, Mo., where plaintiff carried on its business. It is said that plaintiff willfully disregarded the notices it had in its purchase of the bond and coupons and that it acted in bad faith in the purchase and is not the owner and holder of the bond or any coupon.

The case went to trial with a jury in May, 1930, and it was admitted that the bond and coupons involved in the action had been issued by the defendant, had been presented to the Kansas fiscal agency for payment and payment had been refused. The main question tried was the sufficiency of the notice to the plaintiff of the fact that the bonds and coupons were stolen. The jury found in favor of the defendant and with the general verdict returned the following answers to special questions:

"1. Do you find that the plaintiff became the holder of the bond sued on herein, (a) before maturity? A. Yes. (b) For value? A. Yes.

"2. Do you find that Laurence G. Piersol acted as agent for the plaintiff in the purchase of the bond involved in this action? A. Yes.

"3. Do you find that Laurence G. Piersol had any notice that this bond had been stolen from the Montgomery County National Bank? A. No.

"4. On what date did plaintiff receive any notice of theft of any securities from the Montgomery County National Bank? A. About June 3, 1926.

"5. If you find that plaintiff received such notice, then state what agent of the plaintiff received such notice. A. Cashier.

"6. Did such agent remember or have any present recollection or memory

of receipt of such notice or that bond had been stolen from Montgomery County National Bank at the time of the purchase of these bonds? A. No.

"7. Do you find that C. P. Bryant when issuing check for purchase of bond involved herein had any notice or present recollection of notice of theft of said bond? A. Received notice, but no present recollection.

"8. Do you find that plaintiff acquired the bond in good faith? A. Yes."

On this appeal by plaintiff it contends that the finding that it had notice of the theft of the securities stolen and the finding that it had purchased the bonds with notice of the theft are not supported by competent or sufficient evidence. Plaintiff is an investment bank of Kansas City, Mo., dealing in corporation bonds and stock of various issues, mortgages and municipal tax bills, and does a business aggregating from fifteen to twenty million dollars a year. L. G. Piersol has been the agent of the plaintiff for many years, in charge of the buying of municipal securities. The bonds and coupons in question were purchased by him for the plaintiff on February 25, 1928, and paid for by the check of the plaintiff, and he stated that he had no notice that the securities had been stolen. He stated that a stranger came to him who claimed to be the agent of the owner, and asked him to buy the bonds. The stranger went away, but came back a few days later and informed him that Doctor Sellers was the owner, one whom Piersol had not known, that the bonds were in the hands of the Commerce Trust Company as collateral on a loan, so Piersol paid the trust company the amount of his loan and the balance of the purchase price and thus gained possession of the securities, which were turned over to the plaintiff. It was shown that the Montgomery County National Bank was robbed on May 26, 1926, of a large number of securities, including those in question, and that bank within a few hours sent a list of the securities stolen with a description of each of them to the Federal Reserve Bank of the tenth district at Kansas City, Mo., of which the Montgomery County National Bank was a member. In turn the Federal Reserve Bank undertook to send by mail notices of the theft, with a description of the bonds stolen, to its member banks and other banks and brokers of the city, inclosing photostatic copies of the stolen securities. In letters sending the notices, carbon duplicates were made and these duplicates were placed on file in the records of the Federal Reserve Bank. A duplicate copy inclosed in a letter was addressed to plaintiff and was found in the files of the bank and was produced in evidence. W. H. Livingston, a manager of the

Federal Reserve Bank, was the one who dictated such notices and according to the duplicate was the one who dictated the letter giving notice of the theft to the plaintiff. After the theft and before the trial Livingston died, and of course his testimony of the transaction could not be obtained, nor could the mailing of the letter, step by step, be definitely traced. The regular course of the business of that bank was that Livingston dictated the letters to his stenographer, which when written were placed on his desk, and which he then read and when signed were sent to the office boy for mailing. In a letter to the Montgomery County National Bank Livingston wrote that he had sent a list of the stolen securities to members and bankers and brokers of the city. The envelopes in which the notices were sent bore a return address. The stenographer and mailing boy had no present recollection of this particular letter and hence there was no direct evidence of the mailing of the letter to plaintiff. Officers of the bank testified to the general course of business at the bank in sending notices and other mail matter and that the duplicates of letters sent were an indication that the letters were actually transmitted to the addressee, and that if the letters had not been sent the duplicates would not have been placed in the files. An assistant cashier of the bank testified that the course of business and everything in the records of the bank indicated that the letter was sent to plaintiff and that it had not been returned in response to the return address. Photostatic copy of the letter claimed to have been sent to plaintiff, stated:

"There is attached photostatic copy of a list of securities stolen in daylight robbery on May 26, 1926, of the Montgomery County National Bank, Cherryvale, Kan. This list not only includes government securities, but also municipal and industrial securities stolen from that bank. In event any of the securities may be presented at your office, please notify the above bank as well as this office."

No examination was made by Piersol as to whether the securities purchased had been stolen and plaintiff, it appears, had no one charged with the duty of checking stolen bond lists which were filed away when received and were not thereafter examined. The officer who issued the check in payment stated that it would have been possible for plaintiff to have received the photostatic copy of the list and he would not have seen the same. The jury have found that the notice was received by plaintiff's cashier about June 3, 1926, nearly two years before the purchase of the securities by plain-

tiff. In view of the regular course of business in the Federal Reserve Bank, and that a copy of the letter addressed to plaintiff had been placed in the files of that bank, and further that there was a return address on all the letters sent out and there was no return of the letter, it must be said that these were strong circumstances tending to show that the notice was received. This is in fact not denied by plaintiff, but it is contended that there is no direct evidence of the mailing of the letter, and that those in charge of the mailing department were acting in a ministerial capacity, and that their action and knowledge was not notice to nor binding on the plaintiff. It is insisted that knowledge cannot be imputed to a principal unless received by an agent who is acting within the scope of his agency. It is said that the persons in charge of the mailing department and those handling the correspondence had no reason to assume that the plaintiff would ever acquire the stolen bonds as they were not employed to gather information as to such matters. Proof of an established course of business and practice in a business house in the mailing of letters tends, we think, to support the presumption of the mailing and receipt of a letter. (22 C. J. 96, 99.) It is not necessary to trace a letter through every stage of transmittal. The evidence produced tends to show that the letter was written, a copy of it made, that the letter was turned over to the mailing department, and that when mailed a duplicate of it was placed on file and that duplicate, which was introduced in evidence, showed the contents of the letter and showed the fact that the bonds were stolen, together with a requested return on the envelope in case it was not delivered, and there was no return, and these things taken together were proper evidence. The carbon impression of the letter written on a typewriter made with the same stroke of the keys as was done here, may be treated as original, and hence either may be received as primary evidence. (*Glass Co. v. Pierce*, 87 Kan. 548, 125 Pac. 108.) See, also, *Wilkes v. Coal Co.*, 95 Kan. 493, 148 Pac. 768; *Enright v. Railway Co.*, 96 Kan. 546, 152 Pac. 629; *Giersch v. Railway Co.*, 98 Kan. 452, 158 Pac. 54. As business is done in large corporations like the Federal Reserve Bank, and that of the plaintiff, correspondence is necessarily transacted by officers and agents, each transacting the part of the business assigned to him, and the knowledge obtained by these agents is ordinarily deemed to be the knowledge of the corporation. The methods of doing business in such corporations make

it necessary to change to some extent the making of proof of transactions, that is applied between individuals, and so it has been said that:

"Modern ways of doing business and modern inventions have necessarily modified the rigidity of ancient rules of evidence touching correspondence." (*McAuley v. Siscoe,* 110 Kan. 804, 807, 205 Pac. 346.)

Under the circumstances mentioned, whether notice was received by plaintiff became a question of fact for the jury, and it has been found that the cashier, an important officer of plaintiff, who for years had been handling securities purchased and sold by the plaintiff, received notice, and the notice to him was a notice to the corporation for which he acted. The testimony produced, we think, tends at least to support the finding of the jury. It is said that as the cashier had no present recollection of the notice of the stolen bonds the company could not be held liable, especially as twenty-one months had elapsed between the time of the purchase of the bonds and the giving of the notice, but as to overlooking or forgetting such information it is said that:

"A principal may be affected by knowledge which he himself once had, but has now forgotten. He may also be affected by knowledge which his agent acquired or had during the agency and under such circumstances as to make it notice, but which the agent has since forgotten." (2 Mechem ön Agency, 2d ed., 1393.)

We conclude that the finding of the jury and its verdict are supported by the evidence. There is some complaint of the instructions given and of the refusal of some that were requested. An examination of these satisfies us that the charge of the court fairly covered the issues in the case and was without material error.

We find nothing substantial in objections to rulings in the admission of evidence.

The judgment is affirmed.